# UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BENCHMADE KNIFE CO., INC., <br><br> Plaintiff, <br><br> v. <br><br> HOGUE, INC. and HOGUE TOOL & MACHINE, INC., <br><br> Defendants. | Case No. 2:20-cv-11177-JWH-GJSx <br><br> **MEMORANDUM OPINION AND ORDER ON PLAINTIFF'S MOTION TO STRIKE AFFIRMATIVE DEFENSE OF INEQUITABLE CONDUCT [ECF No. 77]** |

Before the Court is the motion of Plaintiff Benchmade Knife Co., Inc. to strike the affirmative defense of inequitable conduct asserted by Defendants Hogue, Inc. and Hogue Tool & Machine, Inc. (jointly, "Hogue"), pursuant to Rule 12(f) of the Federal Rules of Civil Procedure.[1] The Court finds this matter appropriate for resolution without a hearing. *See* Fed. R. Civ. P. 78; L.R. 7-15. After considering the papers filed in support and in opposition,[2] the Court **DENIES** the Motion for the reasons set forth below.

### I. BACKGROUND

Benchmade Knife is the assignee of the U.S. Design Patent No. 686,900 (the "D'900 Patent"), entitled "Knife Blade."[3] Michael Ohlrich is the named inventor on the D'900 Patent.[4] The application for the D'900 Patent was filed on May 21, 2012, and it issued July 30, 2013.[5] The D'900 Patent claims priority to Patent Application No. 29/394,650, which was filed on June 20, 2011, and is now abandoned.[6] The D'900 Patent includes a single claim for "the ornamental design for a knife blade, as shown and described."[7] Figures 1 and 2 reproduced below depict "upper perspective view of the right side [and left side of] a knife blade illustrating [the claimed] design," respectively:[8]

---

[1] Pl. Benchmade Knife Co., Inc.'s Mot. to Strike Affirmative Defense of Inequitable Conduct (the "Motion") [ECF No. 77].

[2] The Court considered the following papers: (1) Answer to Am. Compl. (the "Answer") [ECF Nos. 72 & 73 (sealed version)]; (2) the Motion (including its attachments); (3) Defs.' Opp'n to the Motion (the "Opposition") [ECF No. 83]; (4) Pl.'s Reply in Supp. of the Motion (including its attachments) (the "Reply") [ECF No. 87].

[3] *See* D'900 Patent [ECF No. 60-1]; D'900 Patent Assignment [ECF No. 75-3].

[4] *See* D'900 Patent.

[5] *Id.*

[6] *Id.*

[7] *Id.*

[8] *Id.*





## II. LEGAL STANDARD

### A. Rule 12(f)—Motion to Strike

Under Rule 12(f), the Court may strike "any insufficient defense or any redundant, immaterial, impertinent or scandalous matter." Fed. R. Civ. P. 12(f). "The essential function of a Rule 12(f) motion is to 'avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial.'" *Bureerong v. Uvawas*, 922 F. Supp. 1450, 1478 (C.D. Cal. 1996) (quoting *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *overruled on other grounds*, 510 U.S. 517 (1994)). When ruling on a Rule 12(f) motion to strike, the Court must view the pleading in the light most favorable to the nonmoving party. *See RDF Media Ltd. v. Fox Broad. Co.*, 372 F. Supp. 2d 556, 561 (C.D. Cal. 2005). "Motions to strike an affirmative defense are generally disfavored, but the court may properly grant them when the defense is insufficient as a matter of law." *Multimedia Patent Tr.*

*v. Microsoft Corp.*, 525 F. Supp. 2d 1200, 1211 (S.D. Cal. 2007) (citations omitted).

B.     Rule 9(f)—Pleading Inequitable Conduct

"Inequitable conduct is an equitable defense to patent infringement that, if proved, bars enforcement of a patent." *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1285 (Fed. Cir. 2011). Rule 9(b) governs inequitable conduct claims. *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1326 (Fed. Cir. 2009). "Rule 9(b) requires that in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." *Id.* (internal quotation marks and bracket omitted). To meet that standard, the Federal Circuit (like other circuits) requires the pleading party to identify "the specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO." *Id.* at 1327.

Thus, a well-pleaded claim for inequitable conduct must allege facts supporting that "(1) an individual associated with the filing and prosecution of a patent application made an affirmative misrepresentation of a material fact, failed to disclose material information, or submitted false information; and (2) the individual did so with a specific intent to deceive the PTO." *Id.* at 1327 n.3. "A pleading that simply avers the substantive elements of inequitable conduct, without setting forth the particularized factual bases for the allegation, does not satisfy Rule 9(b)." *Id.* at 1326-27.

With respect to materiality, "[w]here a patent applicant fails to disclose prior art to the PTO, the prior art is but-for material if the PTO would not have allowed a claim had it been aware of the undisclosed prior art." *Therasense*, 649 F.3d at 1292.

## III.  DISCUSSION

### A.  Summary of Arguments

Benchmade Knife moves to strike Hogue's affirmative defense of inequitable conduct.  According to Benchmade Knife, "Hogue's allegations of inequitable conduct, which meander for pages, obfuscate what is missing, and fail to satisfy virtually every requirement of Rule 9(b)."[9]  For the "who" requirement, Benchmade Knife asserts that "Hogue vaguely points to a panoply of actors," including "Mentor, Benchmade, their employees [including Dave Maxey and Jason Boyd], their patent attorneys, and/or others associated with the filing and prosecution of the patent application for the D'900 Patent," which Benchmade Knife argues is insufficient.[10]  Benchmade Knife also contends that Hogue fails to plead with sufficiency the "what" and "where" requirements—Benchmade Knife asserts that the allegedly withheld prior art information was disclosed to the PTO—and that "Hogue has failed to include a single image of *any* knife in its pleading."[11]  Additionally, Benchmade Knife argues that Hogue cannot satisfy the "why" and "how" requirements because the alleged withheld prior art is both immaterial and cumulative to the photos already produced to the PTO.[12]  Finally, Benchmade Knife asserts that "Hogue has failed to plead sufficient facts from which an intent to device the Patent Office can be reasonably inferred."[13]

Hogue responds that it "has pled the 'who, what, when, where and how' of Plaintiff's material omission of the reverse side of the Beshara Orcinas

---

[9]     *See* Motion 15:12-14.
[10]    *See id.* at 15:16-17:23.
[11]    *See id.* at 17:24-19:14.
[12]    *See id.* at 19:15-21:11.
[13]    *See id.* at 21:12-22:25.

knife."[14] For the "who" requirement, Hogue argues that it specifically alleged that Jason Boyd and Dave Maxey "knew the Beshara Orcinas knife was designed with opposing bevels, and deliberately withheld that information from the PTO with intent to deceive."[15] Hogue asserts that whether "Messrs. Boyd and Maxey's supervisory responsibilities and roles in selecting images for the D'900 Patent application" established that they each owed a duty to the PTO is "a question of fact that must be resolved in favor of the non-moving party at the pleading stage."[16]

With respect to the "what" and "where" requirements, Hogue cites its allegations that Benchmade Knife's "use of a cropped and blurry image of the Beshara Orcinas knife design 'would and did mislead the USPTO during its examination of the patent claim to erroneously conclude that the D'900 Patent's sole claimed novel feature of opposing bevels on the blade was not anticipated and made obvious by prior art.'"[17] Hogue asserts that those same allegations meet the "why" and "how" requirements as well and that an uncropped and undistorted image of the Beshara Orcinas knife would have been both material and non-cumulative of the prior art submitted to the PTO.[18] Finally, Hogue maintains that the allegations that Benchmade Knife intentionally submitted a cropped and distorted image of the Beshara Orcinas knife creates a plausible inference that Benchmade Knife did so with intent to deceive the PTO.[19]

---

[14] *See* Opposition 10:20-11:2.
[15] *Id.* at 11:10-12:2 (citing Answer 9:14-17).
[16] *See id.* at 12:12-13:4 (citing *CertusView Techs, LLC v. S&N Locating Servs., LLC*. 198 F. Supp. 568, 597 (E.D. Va. 2016); *Summit 6 LLC v. Research in Motion Corp.*, 2013 WL 12124321, at *1 (N.D. Tex. June 26, 2013)).
[17] *Id.* at 14:5-14 & 15:8-16:4 (citing Answer 8:17-20 & 9:14-19).
[18] *See id.* at 16:10-17:16.
[19] *See id.* at 18:14-20:15.

Benchmade Knife replies that Hogue's allegations fail to show that Hogue never alleged that Boyd and Maxey "saw the back side of [the Beshara Orcinas] knife, whether in person, as a prototype, or in a photograph."[20] According to Benchmade Knife, "Mr. Beshara's website has a picture only of the front of that knife" and includes several knives without opposing bevels.[21]

B.  Analysis

The Court finds that Hogue sufficiently pleaded its affirmative defense of inequitable conduct. In its Reply, Benchmade Knife no longer disputes that Hogue's allegations satisfy the "what," "when," "where," "why," "how," and intent to deceive requirements.[22] Instead, Benchmade Knife focuses its argument on Hogue's failure to allege that Boyd and Maxey ever saw the back of the Beshara Orcinas knife. Contrary to Benchmade Knife's assertion, however, Hogue expressly avers that "Mr. Boyd met Mr. Beshara while attending at least one trade show and received from Mr. Beshara a set of wooden mock-ups or prototypes of his" "Opposing Bevel" design.[23] Thus, Hogue has sufficiently alleged the "who" requirement for its inequitable conduct defense.

---

[20] Reply 1:5-6.

[21] *See id*. at 1:7-14.

[22] Regarding Benchmade Knife's initial disputes, the Court notes that the Federal Circuit has found that "[p]artial disclosure of material information about the prior art to the PTO cannot absolve a patentee of intent if the disclosure is intentionally selective." *Am. Calcar, Inc. v. Am. Honda Motor Co.*, 768 F.3d 1185, 1190 (Fed. Cir. 2014).

[23] Answer 7:10-16. Additionally, Beshara's website—of which both parties agree the Court may take judicial notice—includes a rotating knife with what appears to be the opposing bevel design and a tab titled "BESH WEDGE," which defines "BESH Wedge" as "a revolutionary knife grind composed of diagonally opposing bevels converging to create a third cutting edge." *See* Motion 5 n.2 (citing http://www.beshknives.com/gallery_category.php?newCategoryID=68 (last accessed February 19, 2022)); Opposition 3 n.2.

-7-

## IV.  CONCLUSION

For the foregoing reasons, the Court hereby **DENIES** the Motion.

**IT IS SO ORDERED.**

Dated: February 22, 2022

John W. Holcomb
UNITED STATES DISTRICT JUDGE